RAILWAY EXPRESS AGENCY, INC., *v.* McADAMS.

4-3952

Opinion delivered June 17, 1935.

*A. M. Hartung* and *W. C. Rodgers,* for appellant.
*James S. McConnell* and *J. S. Butt,* for appellees.

SMITH, J. Appellee is a seed and plant dealer at Nashville, Arkansas, and has license to sell his produce under Federal regulations. Appellant is a common carrier engaged in the transportation of these and other commodities. In a case brought in the Howard Circuit Court three separate causes of action were adjudged arising out of the relation between these parties of shipper and carrier.

The first shipment involved two consignments of radishes containing 139 crates of 100 bundles each of the invoice value of $243.25. These were shipped to Coyne & Company at Chicago on December 14, 1933, and upon arrival the consignee refused to accept the shipment on account of the condition of the vegetables. Appellant's agent at the point of shipment was so advised, and he communicated that information to appellee, the shipper. Appellant's agent at Chicago was then advised by appellee by wire to sell the radishes to the best advantage, and they were delivered to Coppersmith & Company, who were responsible dealers in such produce. The radishes were sold for $5, which appears to

have been the best price obtainable. This was $84.69 less than the express charges. The complaint alleges that the radishes were shipped in good merchantable condition, and that they were damaged because appellant carelessly and negligently transported them in hot and improperly ventilated cars and were damaged through the lack of ventilation. We are convinced, after a careful consideration of the testimony, that it is insufficient to support these allegations, and that there can be no recovery on this count.

The second cause of action was based upon a consignment of tomato plants to the Ladago Canning Company at Pulaski, Illinois, of the invoice value of $157.16. It appears, however, that there was no recovery of damages on account of this shipment, and no further reference will be made to it.

The third count was based upon a shipment of 155 crates of tomato plants, containing 310,000 plants, of the invoice value of $310. The plants were shipped C. O. D. to the Summit Canning Company in New Castle, Indiana, and arrived at their destination about 9 A. M., June 2nd. The consignee declined to receive the plants because of the C. O. D. charge, and appellant's agent at New Castle wired appellee at 11 A. M. on June 2nd that delivery would be accepted by the consignee upon the condition only that the collection of the C. O. D. charge was waived. At 9:32 A. M. on the same day the consignee wired appellee to the same effect. In another telegram on the same day the consignee wired that the plants were refused because they were small, spindly and dry.

Upon receipt of these telegrams appellee wired numerous dealers in various parts of the country, and finally received an offer for the plants from the Ozark Canning Company, of Springfield, Missouri. He sent a telegram to appellant at New Castle asking an exact statement of the condition of the plants, which was delivered at 2 P. M. on June 3rd. In response to this telegram appellant's agent answered by wire at 5 P. M. on June 3rd that the plants were in apparent good order. Appellee wired a reshipment order, which was received Monday, June 5th, the exact time of day not being shown

120 

with certainty. It appears, however, that about 5 P. M., June 3d it was determined at a conference between appellant's agent and the consignee's manager that the plants would be worthless if allowed to remain in the crates which contained them that night, and they were delivered to E. S. Matlock, the manager of the consignee, who testified that the plants were carried to the consignee's warehouse, where they were watered and other efforts made to preserve them. The reshipment order was not executed because it was thought that the value of the sound plants at that time would not equal the additional express charges, which would have been $100. Matlock testified that he was able to salvage only 38,000 of the plants, and that the balance was dumped or thrown away as worthless.

It is earnestly insisted that no breach of the carrier's duty in regard to the tomato plants was shown, and that there could be no recovery on this account. It is insisted also that the consignee, and not the consignor, has the right to sue.

We do not concur in either contention. The carrier had no right to deliver the C. O. D. shipment without making the collection. It is argued that the carrier had the right to sell the plants if the express charges were not paid. This right may be conceded, but this is not what it did. No sale was made. On the contrary, there was a delivery to the consignee without making the collection. The shipper did not agree that this should be done, nor did he waive the collection of the C. O. D. charge when advised that the delivery could not otherwise be made.

It must not be overlooked that, after appellee had been advised that the shipment would not be accepted unless the C. O. D. charge was released, appellee wired appellant's agent at New Castle for an exact statement of the condition of the plants. This information was evidently desired in making another sale, which was later made. An answer was wired by appellant's agent at 5 P. M. on June 3d that the plants were then in apparent good order. The agent explained this telegram in his deposition by saying that he meant that they were

in as good shape as it was possible to keep them with the weather hot and the plants already two days in appellant's hands. That qualification, however, was not contained in the telegram, and the explanation was, of course, one of the many facts to be considered and weighed by the jury.

As to the contention that the consignor had no right to sue, it may be first said that the pleadings raised no such issue. Moreover, the testimony of the consignee makes certain the fact that it claims no right to sue for the damages. It disclaims any interest, and explains its refusal to accept the shipment and pay the C. O. D. charge by attempting to show that the delivered plants did not conform to the contract of purchase. In its telegram refusing to accept the plants it was stated that they were small, spindly and dry. It is true a delivery was made to the consignee's manager, which may be treated as a delivery to the consignee itself, but this is why the carrier must be held responsible. The delivery was made without collecting the C. O. D. charge. The consignee's manager makes certain the fact that he did not accept the delivery as consignee, but with the kind intention only of minimizing the damages. But that action made it impossible for appellee to complete the resale of the plants to the dealer in Springfield, Missouri, and appellant's wrongful delivery was responsible for that result. As to the general conditions under which a consignor may sue, see § 399 of the chapter on Carriers, 4 R. C. L., page 942, and the cases cited in the note to that section.

We conclude therefore that the carrier was properly held liable to appellee for the value of the C. O. D. shipment amounting to $310. It should have credit, however, for the amount of its express charges on the other two shipments, less the money, if any, which it may have in its hands derived from any one or all of these shipments. The judgment here appealed from will be reversed, and the cause will be remanded, with directions to render judgment only for the $310 C. O. D. shipment, less the credits indicated.